### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

**ROSALINDA URIAS,**

     **Plaintiff,**

**v.**                                    **2:15-cv-00794-MCA-GJF**

**SHERI LOLMAN, BANK OF
AMERICA, N.A., and FOUR (4)
JOHN/JANE DOES,**

     **Defendants.**

### <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on Defendants' Sheri Lolman and Bank of America, N.A. *Motion to Dismiss* filed September 16, 2016.  [Doc. 4; Doc. 5]  The Court has considered the parties' submissions, the relevant law, the record, and has otherwise been fully advised in the premises.

### <u>BACKGROUND</u>

For the purposes of this Motion, the Court assumes that the following facts taken from the *Complaint* are true.  Plaintiff was an employee of Defendant, Bank of America (the Bank) in Hobbs, New Mexico until she resigned on April 24, 2010.  [Doc. 1-2 (¶ 2)] Defendant, Sheri Lolman was also employed by the Bank, as a Regional Security Auditor.  [Doc. 1-2 (¶ 2)]  Ms. Lolman suspected that Plaintiff was embezzling money from the Bank, and, in February 2010, Ms. Lolman investigated the matter.  [Doc. 1-2 (¶ 3)]  During the investigation, Plaintiff was suspended from work.  [Doc. 1-2 (¶ 3)]  Ms.

Lolman was unable to prove that Plaintiff had embezzled money from the Bank and

Plaintiff was permitted to return to work at the end of February 2010.  [Doc. 1-2 (¶ 3)]

     In May 2010, Lolman concluded that Plaintiff had embezzled from the Bank.

[Doc. 1-2 (¶ 4)]  She provided Detective Mark Munro of the Hobbs Police Department

with the documentation and video surveillance supporting her conclusion.  [Doc. 1-2 (¶¶

4-6)]  Specifically, Ms. Lolman provided Detective Munro with paperwork showing that:

> on March 24, 2010, [Plaintiff] signed for several Quick Business Deposit
> Bags at 0904 hours.  One of these bags was from a Walgreen's account . . .
> and contained $7,350.00.  This bag was signed for by [Plaintiff] but was
> never logged into the computer system or placed in the vault.  The other
> deposit bags were properly input and deposited in the bank. . . .  an audit
> [revealed that] the $7350.00 was never deposited.

[Doc. 1-2 (¶ 7)]  Plaintiff's personal bank accounts with the Bank showed that Plaintiff

deposited $7,998.17 in cash between March 29, 2010 and April 23, 2010.  [Doc. 1-2 (¶

8)]

     Additionally, Ms. Lolman's documentation showed that "sometime after 1600

hours on Friday, April 23, 2010, [Plaintiff] transferred money from the vault to [a teller]."

[Doc. 1-2 (¶ 9)]  The document evidencing the transfer (in the sum of $7800.00)

"appears" to show Plaintiff's signature. [Id.]  The teller did not sign for the $7800.00 and

there is no record that the money was given to the teller.  [Id.]  The teller's register does

not show a $7800.00 purchase, and the money was not returned to the vault.  [Id.] Video

surveillance does not show that Plaintiff moved the money, nor does it otherwise show

what happened to the money.  [Doc. 1-2 (¶ 10)]

Based Ms. Lolman's exchange with Detective Munro, Plaintiff was charged with embezzlement, and a warrant for her arrest was issued in June 2010.  [Doc. 1-2 (¶ 11)] Plaintiff learned of the criminal charges when a prospective employer performed a background check and, owing to the pending charges, refused to employ her.  [Doc. 1-2 ¶ 11)]  In February 2014, the charges against Plaintiff were *Nolle Prosequied* by the office of the District Attorney.  [Doc. 1-2 (¶ 12)]

Plaintiff filed the *Complaint* in state court against the Bank, Ms. Lolman, and Four John/Jane Does (collectively, Defendants) in July 2015, claiming malicious prosecution and wrongful termination  and seeking damages.  [Doc. 1-2 p. 1]  Defendants removed the matter to this Court based upon diversity jurisdiction, and subsequently filed the *Motion to Dismiss*.  [Doc. 3; Doc. 4; Doc. 5]

## ANALYSIS

### I.    Standard of Review

In ruling upon a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court considers whether Plaintiff has stated "a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  For purposes of ruling on a motion to dismiss, the court accepts factual allegations in the complaint as true.  *Id.*  "[A] defendant may raise an affirmative defense by a motion to dismiss for the failure to state a claim" where the facts supporting the defense appear plainly in the complaint itself. *Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965).

## II.      The Grounds Upon Which Defendants' Seek Dismissal

Defendants argue that pursuant to 31 U.S.C. § 5311, commonly called the Annunzio-Wiley Anti-Money Laundering Act (hereinafter, the Act), they are immune from Plaintiff's claims.  [Doc. 5 p. 4]  *See Stoutt v. Banco Popular De Puerto Rico*, 320 F.3d 26, 27 (1st Cir. 2003) (stating the common name of the Act).  Plaintiff has not responded to Defendants' argument.

In the context of "money and finance," Chapter 31, Section 5311, *et seq.* of the United States Code requires "certain reports or records where they have a high degree of usefulness in criminal . . . investigations."  31 U.S.C. § 5311.  The Act authorizes the Secretary of the Treasury to require banks to maintain appropriate procedures to ensure compliance with Section 5311 *et seq.* and related regulations, and to guard against money laundering.  31 U.S.C. § 5318(2).

The Act permits the Secretary of the Treasury to "require any financial institution, and any . . . employee [thereof] to report any suspicious transaction relevant to a possible violation of law[.]"  31 U.S.C. § 5318(g)(1).  In turn, the Act protects financial institutions and their employees from liability for making such reports.  31 U.S.C. § 5318(g)(3).  Specifically, Section 5318(g)(3) provides that:

> [a]ny financial institution that makes a voluntary disclosure of any possible violation of law . . . to a government agency . . . and any . . . employee[] or agent of such institution who makes . . . such disclosure, shall not be liable to any person under any law . . . of any State . . . for such disclosure or for any failure to provide notice of such disclosure to the person who is the subject of such disclosure[.]

Pursuant to its regulatory authority under Section 5318(g)(1) the Secretary of the Treasury established a requirement that national banks file a "Suspicious Activity Report" (SAR) under certain circumstances, including "[w]henever the national bank detects any known or suspected . . . criminal violations, committed or attempted against the bank . . . where the bank believes that it was either an actual or potential victim of a criminal violation, or a series of criminal violations . . . and the bank has a substantial basis for identifying one of its . . . employees. . . as having committed . . . a criminal act, regardless of the amount involved in the violation."  12 C.F.R. § 21.11(c)(1).  While the SAR itself is confidential, National banks are "encouraged to file a copy" thereof with state and local law enforcement agencies, and the confidentiality requirement pertaining to a SAR is not to be construed as prohibiting national banks from disclosing "any information that would reveal the existence of a SAR" to State and local law enforcement agencies.  12 C.F.R. §21.11(e), k(1)(ii)(A)(1).

In sum, the Act and the related regulations provide immunity to financial institutions from liability arising from the act of reporting suspicious financial activity to federal, state, and local law enforcement authorities.  31 U.S.C. § 5318(g)(3).  The immunity applies regardless of whether the report was required or was voluntarily made; and regardless of whether the reported activity is ultimately discovered not to have been unlawful.  12 C.F.R. § 21.11(l); *Lopez v. First Union Nat'l Bank of Fla.*, 129 F.3d 1186, 1192 (11th Cir. 1997) ("As the use of the adjective 'possible' indicates, a financial institution's disclosure is protected even if it ultimately turns out [that] there was no violation of law.").  And,

notwithstanding any implication to the contrary inherent in its common name, the scope of the Act exceeds money-laundering-related events. *See Stoutt*, 320 F.3d at 28, 32 (holding that the Act immunized a bank from civil liability for reporting its suspicion that its customer was engaged in check kiting); *Lee v. Bankers Trust Co.*, 166 F.3d 540, 542-44 (2d Cir. 1999) (holding that, pursuant to the Act, a bank was immune from defamation claim brought by its former managing director on the ground that the bank allegedly reported that he had transferred unclaimed accounts to the bank instead of allowing it to escheat to the state); *Gregory v. Bank one, Ind., N.A.*, 200 F.Supp.2d 1000, 1006 (S.D. Ind. 2002) (holding that the Act provided a bank with an immunity defense against a civil lawsuit brought by a former bank teller insofar as the teller's claims arose from the banks report that she had stolen money from the bank).

Turning to the present case, the Court concludes that the Act immunizes the Defendants from Plaintiff's claims insofar as they arise out of Defendants' reported suspicion that Plaintiff had embezzled funds. The facts in the *Complaint*, the truth of which are assumed, demonstrate that from February through May, 2010 Ms. Lolman suspected Plaintiff of embezzling funds from the Bank. When Ms. Lolman had gathered what she concluded to be proof of her suspicion, she reported the matter to the local police. While the report was ostensibly voluntarily made, the Act and its related regulations "encourage" financial institutions—such as the Bank to report suspected illegal activity to local authorities, and provide immunity from civil liability to them, and to their agents, for having done so. 31

U.S.C. § 5318(g)(1), (3)(a); 12 C.F.R. §21.11(e), k(1)(ii)(A)(1).  Even assuming that the office of the District Attorney declined prosecution because it concluded that Plaintiff had not committed any crime, the Act nevertheless immunizes Defendants against Plaintiff's Claims arising out of the report.  *Lopez*, 129 F.3d at 1192 (stating that a financial institution is immune from liability for reporting suspicious activity regardless of whether the suspect's behavior is ultimately revealed to have been lawful).  Thus, the Court concludes that the Act immunizes Defendants from Plaintiff's claim of malicious prosecution and her claim for damages to the extent that the damages arose from Ms. Lolman's act of reporting Plaintiff's suspected embezzlement to the local police.  As to those claims, Defendants' *Motion to Dismiss* is granted.

The Court is not persuaded, however, that the Act immunizes Defendants from Plaintiff's wrongful termination claim or her claim of damages arising therefrom.  Neither the language or scope of the Act and its related regulations suggest that its provision of immunity extends to wrongful acts committed by a financial institution that are unrelated to the *act of reporting or disclosing* suspicious or unlawful activity.  *See Gregory*, 200 F.Supp. 2d at 1006 (holding that the Act permitted the bank to assert immunity against claims that arose from its report that a teller had stolen funds; but it did not permit the bank to assert immunity from the teller's claims arising from the bank's allegedly wrongful termination of her employment).  Accordingly, Defendants' *Motion to Dismiss* is

denied as to Plaintiff's claims of wrongful termination and damages arising

therefrom.

## CONCLUSION

**IT IS, THEREFORE, ORDERED** that *Defendants' Motion to Dismiss* [Doc. 4] is

**GRANTED** as to Plaintiff's malicious prosecution and related damages claims; and

**DENIED** as to Plaintiff's claim of wrongful termination and damages related thereto.

**SO ORDERED** this 12th day of April, 2016, in Albuquerque, New Mexico.


_____
  **M. Christina Armijo**
  **Chief United States District Judge**